[Cite as *Krohn v. Ostafi*, 2020-Ohio-1536.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


David Krohn                                          Court of Appeals No. L-19-1002

     Appellant                                     Trial Court No. CI0201804046

v.

Charlene A. Ostafi, et al.                           **DECISION AND JUDGMENT**

     Appellees                                     Decided: April 17, 2020

* * * * *

Erik G. Chappell and Lacey L. Riley, for appellant.

Nicolas A. Linares and Matthew T. Kemp, for appellees.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common
Pleas which granted appellees' motion to dismiss with prejudice. For the reasons set
forth below, this court affirms, in part, and reverses, in part, the judgment of the trial
court.

{¶ 2} The following facts are relevant to this appeal. On October 11, 2018, pro se plaintiff-appellant, David Krohn, filed a complaint against six defendants-appellees: his three siblings, individually; his sister, Charlene A. Ostafi, as Administratrix of the Estate of his father, Charles Krohn; his sister's unnamed husband; and First Federal Savings and Loan of Delta. Appellant claimed ten causes of action in his complaint for which he sought equitable relief and monetary damages of over $1 million: incompetency, undue influence, fraud, breach of fiduciary duty, constructive trust, unjust enrichment, accounting, tortious interference with inheritance, tortious interference with contract, and tortious interference with business relationship. The complaint referenced as exhibits two transfer on death deeds and two promissory notes, but no exhibits were attached.

{¶ 3} Appellant alleged that in June 2008, he entered into a written agreement with his father where appellant sold to Charles two properties in Swanton, Ohio, in exchange for Charles' promises to grant transfer on death deeds for appellant's benefit to not only the two properties in Swanton, but also a third property in Toledo. Ohio, located on Swanbrook Court. Appellant alleged Charles further promised to sign two promissory notes for the Swanton properties where "Charles agreed that he would not change or revoke" what appellant called the "TOD Designations" on the Swanton properties without first paying appellant large sums of money. Appellant did not allege this agreement encompassed a fourth property in Toledo located on DelMonte Drive.

{¶ 4} Appellant further alleged that in 2012 and 2015, his father violated their agreement when he signed new transfer on death deeds for the two Swanton properties

2.

and the Swanbrook property replacing appellant as the sole beneficiary with his sister, Charlene.  Appellant collectively called these the "TOD Changes."  The complaint did not reference as exhibits these "TOD Changes," and no exhibits were attached.

{¶ 5} Charles Krohn died on March 28, 2017, at the age of 97.

{¶ 6} Then on November 14, 2018, defendants-appellees Charlene A. Ostafi, individually and as Administratrix of the Estate of Charles Krohn, filed a motion to dismiss the complaint pursuant to Civ.R. 9(B), 10(D)(1), 12(B)(1), and 12(B)(6), R.C. 2117.12, res judicata, "and the relevant Statutes of Limitations."

{¶ 7} On December 4, 2018, appellant filed his opposition to the motion to dismiss.  His pleading attached unauthenticated copies of certain documents, including three transfer on death deeds:  a deed signed by Charles on June 5, 2008, granting title to himself and then transfer on death to appellant filed in Lucas County for real property described on the face of the deed; a deed signed by Charles and appellant on June 5, 2008, granting title to Charles and then transfer on death to appellant filed in Fulton County for real property described in an Exhibit A not attached to the deed; and a third deed signed by Charles and appellant on June 20, 2008, granting title to Charles and then transfer on death to appellant, this time filed in Lucas County for real property also described in an Exhibit A not attached to that deed.  His pleading also attached two "promissory notes," each dated July 2, 2008, in which Charles Krohn, as "Borrower," and appellant, as "Witness," agreed that upon Charles receiving title to two properties in Swanton, Charles will pay appellant $500,000 and $250,000, respectively, or transfer

3.

"full interest to the property" to appellant upon Charles' death. Each "promissory note" stated that Charles executed the transfer on death deeds prior to July 2, 2008, and that each deed was "irrevocable unless full payment has been made to David L. Krohn." The "promissory note" purported to have the signature of a notary, but without the notary's acknowledgment. Appellant did not attach any evidence of the alleged 2012 and 2015 "TOD Changes."

{¶ 8} Minutes later on December 4, 2018, the trial court filed its order and judgment entry granting appellees' motion to dismiss. The trial court's judgment entry is brief:

> This matter is before the Court on Defendant's Motion to dismiss the Plaintiff's Complaint, under Ohio Rules of Civil Procedure 9(B), 10(D)(1), 12(B)(1), 12(B)(6), the Ohio Revised Code §2117.12, res judicata, and the relevant Statutes of Limitations. After considering the Motion and pleadings on file, Court finds the Motion well taken and GRANTS the same. Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that Counts One through Ten against Defendants are dismissed with prejudice.

{¶ 9} Appellant hired counsel and filed this appeal setting forth two assignments of error, which we will address together:

> I. The trial court erred in granting Defendants' Motion to Dismiss.

4.

II.  The trial court erred in failing to consider any further filings made by Plaintiff-Appellant after Defendant-Appellees' Motion to Dismiss.

**I.  Standard of Review**

{¶ 10} Despite appellant alleging otherwise, there is no indication in the record the trial court converted the motion to dismiss under Civ.R. 12(B)(6) to a motion for summary judgment under Civ.R. 56.  We review de novo a trial court's decision granting a motion to dismiss pursuant to Civ.R. 12(B)(6) by accepting as true all factual allegations in the complaint.  *Alford v. Collins-McGregor Operating Co.*, 152 Ohio St.3d 303, 2018-Ohio-8, 95 N.E.3d 382, ¶ 10.  "'[T]hose allegations and any reasonable inferences drawn from them must be construed in the nonmoving party's favor.'  To grant the motion, 'it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought.'"  (Citation omitted.)  *Id*.  Where documents are attached or incorporated in the complaint, they may be considered under Civ.R. 12(B)(6), but the court is not required to accept as true factual allegations in the complaint contradicted by those documents.  *State ex rel. Washington v. D'Apolito*, 156 Ohio St.3d 77, 2018-Ohio-5135, 123 N.E.3d 947, ¶ 10.  We are not required on a motion to dismiss to accept as true appellant's unsupported conclusions or a mere recitation of the elements of a cause of action.  *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶ 14.  Conclusions not supported by factual allegations in the complaint cannot be deemed admitted and are

5.

insufficient to withstand a motion to dismiss. *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324, 544 N.E.2d 639 (1989).

{¶ 11} Civ.R. 12(B)(6) states, "Every defense, in law or fact, to a claim for relief in any pleading * * * may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted * * *."

{¶ 12} A trial court's grant of Civ.R. 12(B)(6) dismissal is without prejudice except in those cases where the claim cannot be pled in any other way. *Fletcher* at ¶ 17. Failure to commence an action within the applicable statute of limitations warrants a dismissal on the merits of the case and constitutes a dismissal with prejudice. *LaBarbera v. Batsch*, 10 Ohio St.2d 106, 116, 227 N.E.2d 55 (1967). A court has subject-matter jurisdiction to decide whether the statute of limitations should bar a cause of action. *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 76, 701 N.E.2d 1002 (1998). The existence and duration of a statute of limitations is determined by the legislature as a matter of substantive law. *Erwin v. Bryan*, 125 Ohio St.3d 519, 2010-Ohio-2202, 929 N.E.2d 1019, ¶ 29. A court does not possess the authority to extend the statute of limitations, either through the Rules of Civil Procedure or case law. *Harris v. Firelands Regional Med. Ctr.*, 6th Dist. Erie No. E-17-053, 2018-Ohio-3085, ¶ 38, citing *Erwin* at ¶ 4. "A motion to dismiss based upon a statute of limitations may be granted only when the complaint shows conclusively on its face that the action is time-barred." *LGR Realty, Inc. v. Frank & London Ins. Agency*, 152 Ohio St.3d 517, 2018-Ohio-334, 98 N.E.3d 241, ¶ 10.

6.

## II. Causes of Action

## A. Claims Dismissed Without Prejudice

### 1. Incompetency

{¶ 13} Appellant alleged as Count 1 incompetency by stating, "At the time of the purported execution of the TOD Changes, Charles was incompetent and of unsound mind and memory and therefore incapable of conveying any interest in the properties or making the TOD Changes."

{¶ 14} "Mental incapacity means not partial but complete incapacity to formulate an intention to convey one's property measured at the time the conveyance was made. Even an imperfect assent given by an insane person has been held to be mental capacity." *Vesy v. Giles*, 108 N.E.2d 300, 302 (C.P.1952), citing *Fissel v. Gordon*, 83 Ohio App. 349, 350, 83 N.E.2d 525 (1st Dist.1948). "Moreover, feebleness of body, periods of mental confusion, and a memory not as sound as it once was are not enough to deprive a grantor of the right to dispose of his property in any way he may wish or deem best, a subject upon which he may have reflected much when in full vigor of mind and body." *Id.*

{¶ 15} After reviewing de novo the four corners of the complaint we find there is no prima facie showing that when Charles was 92 and 95, respectively, he was completely incapable of formulating an intention to convey his properties as he deemed best. *Willis v. Baker*, 75 Ohio St. 291, 300, 79 N.E. 466 (1906). We are left to speculate that due to age alone, Charles was incompetent and of unsound mind and memory in

7.

2012 and 2015, which is insufficient to withstand Civ.R. 12(B)(6) dismissal. *See In re Guardianship of Breece*, 173 Ohio St. 542, 545-46, 184 N.E.2d 386 (1962). We find the trial court properly dismissed the claim of incompetency, but erred when it dismissed the claim with prejudice. The claim should have been dismissed without prejudice.

### 2. Unjust Enrichment

{¶ 16} Appellant alleged as Count 6 unjust enrichment by stating, "The actions of Charlene as herefore (sic.) described have unjustly enriched her. It would be inequitable for Charlene to retain the benefits and not return them to David or at least the Charles Krohn estate."

{¶ 17} To make a prima facie showing of Charlene's unjust enrichment, appellant must state facts in his complaint that Charlene retained money or benefits "'which in justice and equity belong to another.'" (Citation omitted.) *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20. Restitution is the common law remedy to a claim of unjust enrichment. *Id.* Restitution only compensates a plaintiff for the benefit the plaintiff conferred on the defendant. *Id.* at ¶ 21.

{¶ 18} For purposes of Civ.R. 12(B)(6) we accept as true appellant's allegations of "[t]he actions of Charlene as herefore (sic.) described," but we cannot accept as true appellant's unsupported conclusion that "it would be inequitable for Charlene to retain the benefits and not return them to David or at least the Charles Krohn estate." Where appellant does not allege that he directly conferred a benefit to his sister that she unjustly retained, his unjust enrichment claim fails under Civ.R. 12(B)(6). *Id.* at ¶ 22. From our

8.

de novo review of this cause of action, we find the trial court's dismissal was proper, but erred when it dismissed the claim with prejudice. The claim should have been dismissed without prejudice.

### 3. Tortious Interference with Contract and with Business Relationship

{¶ 19} Appellant alleged as Counts 9 and 10 the related claims of tortious interference with contract and with business relationship, respectively, by stating:

> David and Charles entered into a contractual arrangement regarding the Swanton Properties under which David would receive a substantial payment from Charles during his lifetime or receive the Swanton and Swanbrook Properties at Charles' death by operation of the TOD Designation. Charlene had knowledge of the existence of the TOD Designations. Charlene intentionally procured Charles' breach of the contracts by virtue of the TOD Changes. Charlene's intentional procurement of Charles' breach of the contract lacked justification. * * * [And] David and Charles entered into a business relationship regarding the Swanton Properties under which David would receive a substantial payment from Charles during his lifetime or receive the Swanton and Swanbrook Properties at Charles' death by operation of the TOD Designation. Charlene had knowledge of the existence of the relationship. Charlene intentionally caused Charles to breach or terminate the relationship.

{¶ 20} For Civ.R. 12(B)(6) purposes, to make a prima facie showing of Charlene's tortious interference with business relationships and contract rights, appellant must state facts in his complaint, that, "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995). The elements of these torts are similar: (1) the existence of a business or contractual relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship or contract without justification; and (4) damages resulting therefrom. *Firestone v. Galbreath*, 895 F.Supp. 917, 930 (S.D.Ohio 1995); *Wauseon Plaza Ltd. Partnership v. Wauseon Hardware Co.*, 6th Dist. No. F-02-029, 156 Ohio App.3d 575, 2004-Ohio-1661, 807 N.E.2d 953, ¶ 57; *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176, 707 N.E.2d 853 (1999). "Tortious interference with a business relationship is similar to tortious interference with a contract, but the result of the interference does not require the breach of contract." *Martin v. Jones*, 4th Dist. No. 14CA992, 2015-Ohio-3168, 41 N.E.3d 123, ¶ 63.

{¶ 21} For purposes of Civ.R. 12(B)(6) we accept as true appellant's allegations of Charlene's "knowledge of the existence of the TOD Designations" and "knowledge of the existence of the [business and contractual] relationship," but we do not accept as true appellant's unsupported conclusions that Charlene "intentionally procured" the "TOD

10.

Changes" and "intentionally caused Charles to breach or terminate the [business and contractual] relationship."

{¶ 22} Even if we accept for Civ.R. 12(B)(6) purposes the two "promissory notes" attached to appellant's response to appellees' motion to dismiss as collectively representing the written agreement between appellant and Charles, despite being hearsay pursuant to Evid.R. 801(C), they fail to support appellant's claims. A promissory note is a contract subject to rules of contract interpretation. *Cranberry Fin., L.L.C. v. S & V Partnership*, 6th Dist. No. H-09-004, 186 Ohio App.3d 275, 2010-Ohio-464, 927 N.E.2d 623, ¶ 9. It is well-settled that past performance, or a promise that has already been performed, is not valid consideration to support a binding contract. *Cuspide Properties, Ltd. v. Earl Mechanical Servs.*, 6th Dist. No. L-14-1253, 2015-Ohio-5019, 53 N.E.3d 818, ¶ 46. Charles' promises to appellant stated in the July 2, 2008 "promissory notes" were conditioned upon performances that already occurred: transfer on death deeds signed prior to July 2, 2008, rendering them non-binding contracts between appellant and his father.

{¶ 23} We recognize that appellant attached to his appellate brief an exhibit purporting, "In September of 2017, Plaintiff-Appellant made a claim for breach of contract against the estate of Charles Krohn (Lucas County [Court of Common Pleas, Probate Division,] Case No. 2017 EST 802). (A copy of the filed claim is attached hereto as Appendix 'A'.)" That exhibit, which did not append to it any of the written documents upon which appellant relies in this case, is not in the record before us. App.R. 9(A)(1).

11.

We may not add matter to the record, which was not part of the trial proceedings, and then decide the appeal on the basis of the new matter. *State v. Ishmail*, 54 Ohio St.2d 402, 406, 377 N.E.2d 500 (1978).

{¶ 24} From our de novo review of appellant's causes of action for tortious interference with contract and with business relationship, we find the trial court's dismissal of these claims was proper, but erred when it dismissed the claim with prejudice. The claim should have been dismissed without prejudice.

## B. Claims Dismissed With Prejudice

### 1. Undue influence

{¶ 25} Appellant alleged as Count 2 undue influence by stating, "At the time of the purported execution of the TOD Changes, Charles was susceptible to undue influence due to his mental incompetency and dependence upon Charlene and therefore incapable of conveying any interest in the Properties or making the TOD Changes."

{¶ 26} Appellant's undue influence claim is time-barred for Civ.R. 12(B)(6) purposes. The statute of limitations for undue influence is four years pursuant to R.C. 2305.09. *Hicks v. Garrett*, 5th Dist. Stark No. 2011CA00109, 2012-Ohio-3560, ¶ 115. "'[C]onstructive knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule.'" (Emphasis sic.) *Id.* at ¶ 11, quoting *Flowers v. Walker*, 63 Ohio St.3d 546, 549, 589 N.E.2d 1284 (1992). Appellant's complaint states the first "TOD Change" that harmed him occurred in 2012. We find that appellant had constructive knowledge of his

12.

sister's alleged undue influence in 2012, and the filing of his complaint in 2018 was untimely under the four-year statute of limitations. We find the trial court properly dismissed the claim of undue influence with prejudice.

## 2. Fraud and Breach of Fiduciary Duty

{¶ 27} Appellant alleges as Counts 3 and 4 fraud and breach of fiduciary duty, respectively, are related matters we will address together.

{¶ 28} Appellant alleged fraud by stating,

Upon Plaintiffs information and belief, Charles did not want nor intended for Charlene to receive the entire fee simple in the interest in the properties when he purportedly made the TOD Changes. * * * The TOD Changes were procured by fraud and misrepresentations of Charlene as evidenced partially by her receiving the entire fee simple interest in all of the Properties upon Charles' death to the complete exclusion of her siblings and her concealment of the TOD Changes from her siblings.

Appellant alleged breach of fiduciary duty by stating:

Charlene was an agent of Charles under a financial power of attorney. At the time of the TOD Changes, Charlene held a relationship of special trust with Charles. Charlene owed a duty of utmost loyalty and good faith to Charles regarding the transfer and conveyance of any of his assets. Charlene breached this duty by causing Charles to change the TOD designations of the Properties to herself for her own personal benefit.

{¶ 29} Dismissal under Civ.R. 12(B)(6) is warranted where the complaint on its face conclusively indicates that appellant's fraud and breach of fiduciary duty claims are time-barred due to the applicable statute of limitations. *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 13. "Claims for fraud and breach of fiduciary duty based on fraud are governed by the four-year statute of limitations set forth in R.C. 2305.09, unless the claim is not discovered despite reasonable diligence." *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 24. Appellant's complaint states the first "TOD Change" that harmed him occurred in 2012. "A cause of action for fraud * * * accrues either when the fraud is discovered, or [when] in the exercise of reasonable diligence, the fraud should have been discovered." *Id.* at ¶ 29. The statute of limitations commences upon a showing of sufficient facts to alert a reasonable person to the possibility of a fraud. *Id.* at ¶ 30. We find that appellant had constructive knowledge of his sister's alleged fraud and breach of fiduciary duty in 2012, and the filing of his complaint in 2018 was untimely under the four-year statute of limitations. We find the trial court properly dismissed these claims with prejudice.

### 3. Intentional Interference with Expectancy of Inheritance

{¶ 30} Appellant alleged as Count 8 tortious interference with inheritance by stating:

> At all times material hereto David [had] a reasonable expectation of
> an inheritance from his father, Charles, that included the properties. As

14.

evidenced by the TOD Designations by Charles for the purchase of the Properties. Charlene wrongfully, intentionally and maliciously interfered with that reasonable expectation by causing Charles to allegedly make the TOD Changes.

{¶ 31} Dismissal under Civ.R. 12(B)(6) is warranted where the complaint on its face conclusively indicates that appellant's intentional interference with expectancy of inheritance claim is time-barred. His claim is grounded in tortious conduct: fraud or undue influence. *Firestone*, 895 F.Supp. at 930, citing *Firestone v. Galbreath*, 67 Ohio St.3d 87, 88, 616 N.E.2d 202 (1993); *Marks v. KeyBank N.A.*, 8th Dist. Cuyahoga No. 84691, 2005-Ohio-769, ¶ 23; *Orvets v. Natl. City Bank, Northeast*, 131 Ohio App.3d 180, 190, 722 N.E.2d 114 (9th Dist.1999). Having previously determined claims of fraud and undue influence are time-barred by the applicable statute of limitation, we find that appellant's claim for intentional interference with expectancy of inheritance is similarly time-barred, and the trial court properly dismissed this claim with prejudice.

### 4. Remedies

{¶ 32} Dismissal under Civ.R. 12(B)(6) is warranted where remedies claimed are not independent causes of action. *Franklin v. Gwinnett Cty. Pub. Schools*, 503 U.S. 60, 73-74, 112 S.Ct. 1028 117 L.Ed.2d 208 (1992). "Although some confusion exists as to the distinction between right of action and cause of action * * * a cause of action may be defined as the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief." *Norwood v. McDonald*, 142 Ohio St.

299, 309, 52 N.E.2d 67 (1943), *overruled on other grounds by Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995).

### a. Constructive Trust

{¶ 33} Appellant alleged as Count 5 constructive trust by stating:

As a result of the actions of Charlene as set forth herein, a constructive trust should be imposed upon the Swanton, Swanbrook, and DelMonte Properties, or the proceeds thereof, received upon the death of Charles Krohn for the benefit of David Krohn and said assets should be returned to David as rightful beneficiary.

{¶ 34} "A constructive trust is an equitable remedy that protects against unjust enrichment and is usually invoked when property has been obtained by fraud." *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 19. "In Ohio, statutes of limitation attach to causes of action and not to the remedial form in which the action is brought. If the cause of action in which imposition of a constructive trust is sought as a remedy is barred by a statute of limitation, the imposition of a constructive trust is likewise barred." *Peterson v. Teodosio*, 34 Ohio St.2d 161, 172, 297 N.E.2d 113 (1973).

{¶ 35} Having previously determined appellant's claims for fraud and breach of fiduciary duty are barred by the four-year statute of limitations under R.C. 2305.09, appellant's remedy sought for a constructive trust is also time-barred. *Id.* at 173. We find the trial court properly dismissed this claim with prejudice.

16.

**b. Accounting**

{¶ 36} Appellant alleged as Count 7 accounting by stating, "Based upon all of the foregoing, Plaintiff requests a full and accurate accounting of what Charlene has done with the Properties or the proceeds thereof since the death of Charles."

{¶ 37} An accounting, like a constructive trust, is an equitable remedy, not a cause of action, and the claim for an accounting remedy is properly dismissed under Civ.R. 12(B)(6). *See Thatcher v. Meck*, 49 Ohio App. 92, 93, 195 N.E. 254 (6th Dist.1934); *see also Weinberger v. Weinberger*, 43 Ohio App.2d 129, 132, 334 N.E.2d 514 (9th Dist.1974). The trial court properly dismissed this claim with prejudice where it was grounded upon the time-barred allegations of Charlene's alleged fraud and breach of fiduciary duty. *Peterson* at 173.

{¶ 38} Appellant's first assignment of error is well-taken in part, and not well-taken in part.

### C. Untimely Response

{¶ 39} Appellant admitted he filed late his pro se opposition to appellees' motion to dismiss, but argued his delay was excused by his misunderstanding of information he received from the clerk of courts regarding the timing for his response.

{¶ 40} A pro se litigant must still follow the same rules and procedures as attorneys. *HSBC Bank USA, N.A. v. Takats*, 6th Dist. Lucas No. L-14-1155, 2015-Ohio-3077, ¶ 9. While we may afford appellant reasonable leeway in the construction of pleadings in the interests of justice, ultimately, a pro se litigant may not be given any

17.

greater rights than a party represented by counsel and bears the consequences of any litigation mistakes.  *HSBC Bank United States NA v. Bein*, 6th Dist. Lucas No. L-13-1067, 2014-Ohio-56, ¶ 7.

{¶ 41} Appellant failed to timely respond to appellees' motion to dismiss pursuant to the civil rules of procedure.  According to the record, service of appellees' motion to dismiss was mailed to appellant on Wednesday, November 14, 2018.  Pursuant to Civ.R. 6, we find appellant had the right to respond to the motion until Monday, December 3, 2018.  Instead, without seeking an extension pursuant to Civ.R. 6(B), he filed a response on December 4, 2018, at 4:14 pm.  Minutes later, at 4:29 pm, the trial court filed its order and judgment entry granting appellees' motion to dismiss.  We find appellant failed to respond by the time allowed and, instead, without notice to the court requesting an extension of time, responded late.

{¶ 42} "A trial court is vested with broad discretion in controlling its docket and regulating the proceedings before it."  *Pollock v. Block*, 6th Dist. Lucas No. L-99-1106, 2000 WL 819276, *5.  We are mindful that cases should be decided upon their merits, where possible, rather than on procedural grounds.  *Marion Prod. Credit Ass'n. v. Cochran*, 40 Ohio St.3d 265, 270-71, 533 N.E.2d 325, 331 (1988).  Absent an abuse of discretion, we will not reverse the trial court's entry of dismissal where appellant opposed dismissal outside the time frame allowed by the procedural rules of the court.  *See Hillabrand v. Drypers Corp.*, 87 Ohio St.3d 517, 519-520, 721 N.E.2d 1029 (2000); *see*

18.

*also State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs.*, 72 Ohio St.3d 464, 465, 650 N.E.2d 1343 (1995).

{¶ 43} Even after considering appellant's tardy opposition to appellees' motion to dismiss, we find appellant failed to withstand the Civ.R. 12(B)(6) challenges to his ten causes of action stated in the complaint. We find the trial court did not abuse its discretion when it filed its judgment entry of dismissal after the time for appellant's opposition had run.

{¶ 44} Appellant's second assignment of error is not well-taken.

### III. Conclusion

{¶ 45} We affirm the trial court's judgment with prejudice on appellant's claims of undue influence, fraud, breach of fiduciary duty, intentional interference with expectancy of inheritance, constructive trust, and accounting, and we remand solely for the purpose of the trial court issuing its judgment without prejudice on appellant's claims of incompetency, unjust enrichment, tortious interference with contract, and tortious interference with business relationship.

{¶ 46} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
reversed in part and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.           _____
                                                 JUDGE

Thomas J. Osowik, J.     
CONCUR.                            _____
                                                   JUDGE


Gene A. Zmuda, P.J.       _____
CONCURS, IN PART,                        JUDGE
DISSENTS IN PART, AND
WRITES SEPARATELY.


**ZMUDA, P.J.**

{¶ 47} Because I disagree with the majority's application of the standards on which the trial court dismissed appellant's claims, I am compelled to dissent, in part, from the majority's decision. Specifically, I find the majority failed to accept the facts alleged in the complaint as true, and failed to draw all reasonable inferences in favor of appellant, as required when reviewing a dismissal pursuant to Civ.R. 12(B)(6). I also find the majority improperly speculated as to facts which were not alleged in the

complaint, and in turn relied on those speculated facts as evidence in determining that some of appellant's claims are barred by the applicable statute of limitations.

## I. The Trial Court Erred in Dismissing Appellant's Claims on Grounds not Supported by Law.

{¶ 48} Appellee, Charlene Ostafi, both individually and in her capacity as administratrix of her father's estate, sought dismissal of appellant's claims with her November 14, 2018 motion to dismiss. Appellee sought dismissal under Civ.R. 9(B), 10(D)(1), 12(B)(1), 12(B)(6), R.C. 2117.12, res judicata, and the applicable statutes of limitations. The trial court's order granting the dismissal appears to have been prepared by appellee's counsel as it contains counsel's identifying information in the caption. The trial court's entry contains no analysis and merely states that all claims are dismissed based on each of the grounds identified in the motion to dismiss. The trial court provided no rationale as to how it arrived at these conclusions. Without the trial court's written analysis, it is unclear on what grounds the trial court granted the motion other than the specific arguments contained in appellee's motion. This complicates our review as several of the grounds on which appellee requested dismissal cannot as a matter of law be the basis on which a motion to dismiss is granted. To properly frame our review, I would first identify the grounds on which the trial court could have granted appellee's motion as a matter of law.[1]

---

[1] Appellee's brief argues only that the trial court properly dismissed each claim for failing to state a claim under Civ.R. 12(B)(6) or based on the applicable statute of limitations. Because I disagree with the majority's conclusion as to these grounds and would not

21.

{¶ 49} Civ.R. 12(B) provides the general defenses to a complaint which may be made by motion. Appellee sought dismissal of appellant's claims pursuant to Civ.R. 12(B)(1) and Civ.R. 12(B)(6)—lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Appellee properly raised these defenses by motion with the trial court and the granting of the motion to dismiss on these grounds is properly before us for review. Additionally, appellee sought a dismissal of appellant's claims as being time-barred under the generally applicable statute of limitations and R.C. 2117.12 which establishes a statute of limitations for actions against an estate under certain procedural circumstances. While seeking a dismissal of a claim based on the applicable statute of limitations is generally not appropriate at the pleadings stage, there may be grounds for dismissing a claim as untimely filed if the face of the complaint *conclusively* shows the claims are barred. *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St. 2d 376, 379, 433 N.E.2d 147 (1982), citing *Scheer v. Air-Shields, Inc.*, 61 Ohio App.2d 205, 401 N.E.2d 478 (1979) and *Durham v. Anka Research Limited*, 60 Ohio App.2d 239, 396 N.E.2d 799 (1978) (emphasis added). Since *Velotta* allows for a defendant to seek the dismissal of claims as being time-barred by motion under these limited circumstances, the trial court's dismissal on statute of limitations grounds is also properly before us for review.

---

affirm the trial court's dismissal, I find it necessary to review all grounds on which the trial court based its dismissal as set forth in the trial court's entry granting appellee's motion.

22.

{¶ 50} However, the remaining grounds on which the trial court granted judgment—Civ.R. 9(B), 10(D)(1), and res judicata—do not provide independent grounds for dismissal at the pleadings stage and dismissal on these grounds is subject to reversal as a matter of law. Civ.R. 9(B) requires a complaint alleging fraud be stated with particularity. "Failure to plead the elements of fraud with particularity results in a defective claim that cannot withstand a Civ.R. 12(B)(6) motions to dismiss." *Wells Fargo Bank, N.A. v. Johnson*, 6th Dist. Lucas No. L-15-1111, 2016-Ohio-1114, ¶ 17. Therefore, whether a fraud claim is pled with sufficient particularity pursuant to Civ.R. 9(B) is encompassed within a court's consideration on a motion to dismiss under Civ.R. 12(B)(6). Civ.R. 9(B) is merely the measure by which a trial court determines whether a plaintiff has sufficiently alleged a fraud claim to survive a challenge under Civ.R. 12(B)(6). It does not create independent grounds for dismissal as the trial court's judgment entry states.

{¶ 51} Similarly, while Civ.R. 10(D)(1) requires a written instrument to be attached to any claims arising from the terms of that instrument, the failure to attach the instrument alone is not grounds for dismissal. *Fletcher v. University Hospitals of Cleveland,* 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147 (holding "[b]ecause there is no language in Civ.R.10(D)(1) that the account or written instrument is required to establish the adequacy of the complaint, any failure to attach the required copies is properly addressed by a motion for a more definite statement under Civ.R. 12(E). In short, a party can still plead a prima facie case in such circumstances even without

attaching the account or written agreement to the complaint. Thus, the complaint will survive a motion to dismiss for failure to state a claim."). Appellant clearly did not attach any written instruments to his complaint.[2] The trial court's proper remedy for this failure is the granting of a motion for a more definite statement, not the dismissal of appellant's claims. *Id.* The trial court's use of Civ.R. 10(D)(1) as the basis for dismissal is therefore contrary to law.

{¶ 52} The dismissal of appellant's claims under res judicata is likewise improper. Res judicata is an affirmative defense that "may not be raised by motion to dismiss under Civ.R. 12(B)." *State ex rel. Green v. Wetzel,* 158 Ohio St.3d 104, 2019-Ohio-4228, -- N.E.3d --, ¶ 6, citing *State ex rel. Freeman v. Morris*, 62 Ohio St.3d 107, 109, 579 N.E.2d 702 (1991). Clearly, if the trial court's dismissal was based on res judicata, that dismissal is likewise in error.

{¶ 53} Appellant's first assignment of error states, in part, that the trial court erred in dismissing his claims pursuant to Civ.R. 9(B), 10(D)(1), and res judicata. Because Civ.R. 9(B) and 10(D)(1) do not provide an independent basis on which a dismissal can

---

[2] The record shows appellant filed an untimely opposition to appellee's motion just prior to the trial court signing the judgment entry. The opposition included the written instruments on which appellant's claims were based which were not included with the complaint. While the inclusion of the written instruments with appellee's opposition may cure the complaint's defects under Civ.R. 10(D)(1), it is unnecessary to review the validity of the written instruments as the failure to include them with the complaint does not provide an independent basis for dismissal. The trial court's reliance on Civ.R. 10(D)(1) as a basis for dismissal warrants reversal without regard to whether the trial court considered the instruments in dismissing appellant's claims.

24.

be granted, and because res judicata is an affirmative defense that cannot be raised by motion, I would find that the trial court's dismissal on these grounds was error and that appellant's first assignment of error is found well-taken as to these issues.

**II. The Face of Appellant's Complaint does not Conclusively Show any of his Claims are Barred by Applicable Statutes of Limitation.**

{¶ 54} The majority determines that appellant's claims of undue influence, fraud, breach of fiduciary duty, intentional interference with expectancy of inheritance, constructive trust, and an accounting are barred by the applicable statute of limitations.[3] In doing so, the majority concluded that the face of appellant's complaint conclusively shows that these claims are time-barred, relying on *Velotta,* 69 Ohio St.2d at 379, 433 N.E.2d 147. I disagree.

{¶ 55} Appellant's complaint alleges that in 2008, appellant's father executed transfer-on-death affidavits related to several parcels of land naming appellant as the beneficiary. Appellant and his father also executed promissory notes which stated that should his father change the transfer-on-death beneficiary on any of these parcels, that appellant's father would pay him $500,000 per parcel. In 2012 and 2015, appellant's father executed new transfer-on-death affidavits naming appellee Ostafi, appellant's sister, as the beneficiary ("TOD changes"). Appellant did not receive any payment from

---

[3] I agree with the majority's conclusion that appellant's claims for constructive trust and an accounting are remedies and not causes of action. I would dismiss these claims for that reason without regard to whether the underlying claims for which those remedies could be granted are barred by the applicable statute of limitations.

his father upon the change in beneficiary. Appellant's complaint alleges appellee Ostafi committed fraud and exercised undue influence over their father in obtaining the TOD changes, conduct which appellant alleges also supports his claim of intentional interference with expectancy of inheritance.

{¶ 56} Appellant's claims of undue influence, fraud, breach of fiduciary duty, intentional interference with expectancy of inheritance each have a general statute of limitations of four years. The majority correctly notes that these claims do not accrue, and therefore the statute of limitations does not begin to run, until appellant discovered, or in the exercise of reasonable diligence should have discovered, appellee's conduct giving rise to these claims. *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 24; *Hicks v. Garrett*, 5th Dist. Stark No. 2011CA00109, 2012-Ohio-3560, ¶ 11. The majority incorrectly concludes that the face of appellant's complaint conclusively shows that appellant should have discovered Ostafi's conduct giving rise to the underlying claims when it first occurred in 2012. As a result, the majority finds that appellant's claims filed in 2018, more than four years after Ostafi's conduct first occurred, were time-barred.

{¶ 57} It is undisputed that appellant's complaint alleges Ostafi's fraudulent conduct began in 2012 because that is the date of the first TOD Change. There are no allegations, however, that the 2012 TOD Change was recorded or otherwise made known to appellant. In fact, appellant specifically alleges Ostafi actively concealed the 2012 TOD Change, along with the subsequent 2015 TOD Change, from him and any others

who may have had an interest in his father's estate. Appellant also alleges it was only when his father died that the fraudulent conduct was revealed. There is simply no basis to conclude that appellant should have discovered that conduct when it occurred in 2012 because the complaint specifically alleges this fact to have been hidden from his discovery.

{¶ 58} When ruling on a motion to dismiss, "we must presume that all factual allegations in the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Application of this principle to the facts in this case requires us to presume that appellant could not have discovered Ostafi's concealed conduct until after his father's death on March 28, 2017. As his complaint was filed the following year, his claims would not be time-barred under the applicable statute of limitations.

{¶ 59} Appellee Ostafi's motion to dismiss also argues appellant's claims are time-barred under R.C. 2117.12 which sets a statute of limitations for claims against an estate, regardless of their nature, under certain procedural circumstances. R.C. Chapter 2117 outlines the procedure by which a claim is made against an estate. R.C. 2117.06 requires anyone with a claim against an estate to present that claim to the administrator of the estate within six months after the death of the decedent. If the final account of the estate has already been filed, or a certificate of termination of the estate has been filed, the notice of claim must be presented to the distributees of the terminated estate. R.C. 2117.06(A)(2). R.C. 2117.12 states that if a claim presented to the estate or its

27.

distributees pursuant to R.C. 2117.06(A)(2) is rejected, the claimant must file their civil action seeking recovery within two months of that rejection. If the claim is not filed within that two months, it is time-barred. Here, for the dismissal of appellant's claims to be properly dismissed under R.C. 2117.12, it must be conclusive from the face of the complaint that his claims were filed outside the time allowed under these circumstances. *Velotta* at 379.

{¶ 60} Appellee argues that this entire process already took place in a prior action and that appellant is barred from relitigating this issue here. While this argument appears to be based on res judicata rather than the time limitations established in R.C. 2117.12, clarification of appellee's argument is unnecessary since appellant's complaint is silent as to these procedural requirements. Since the complaint is silent as to these procedural requirements, there can be no reasonable finding that the complaint conclusively shows appellant's claims were filed outside the time permitted in R.C. 2117.12. I would find the trial court's conclusion otherwise was error.

{¶ 61} For these reasons, I dissent from the majority's conclusion and would find appellant's first assignment of error well-taken regarding the dismissal of his claims as time-barred. I would find appellant's complaint does not conclusively show his claims were filed outside the applicable statutes of limitations or the limits established in R.C. 2117.12 and would reverse the judgment of the trial court.

28.

### III. The Trial Court's Dismissal for lack of
### Subject-Matter Jurisdiction was Improper.

{¶ 62} A trial court's lack of subject-matter jurisdiction can be raised by motion pursuant to Civ.R. 12(B)(1). "Subject matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 18. "A court's subject matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." *Id.* Appellee Ostafi argues the trial court lacked subject-matter jurisdiction over appellant's claims solely because another court has already considered the issues among the individual parties. This argument is not based on the trial court's subject-matter jurisdiction but on the doctrine of res judicata.

{¶ 63} "The doctrine of res judicata provides that a final judgment rendered on the merits by a court of competent jurisdiction is a complete bar to any subsequent action on the same claim between the same parties or those in privity with them." *State ex rel. Oliver v. Turner*, 153 Ohio St.3d 605, 2018-Ohio-2102, 109 N.E.3d 1204, ¶ 15. Appellee argues that because the Wood County Court of Common Pleas had already issued a judgment in a divorce action which resolved disputes related to the subject parcels that appellant could not raise them again before the trial court here. This argument relates to the rights of the individual parties and not the power of the trial court to hear these claims. As a result, appellee's argument is based on res judicata, not the trial court's lack of subject-matter jurisdiction over appellant's claims. Since res judicata cannot be raised

29.

through a motion to dismiss under Civ.R. 12(B), *Wetzel,* 158 Ohio St.3d 104, 2019-Ohio-4228, 140 N.E.3d 586, at ¶ 6, and appellee made no other argument regarding the trial court's subject-matter jurisdiction to hear appellant's claims, I would find appellant's first assignment of error well-taken, in part, with regard to the trial court's dismissal of his claims based on a lack of subject-matter jurisdiction.

### IV. Appellant Alleged Sufficient Facts to Support his Claims for Incompetency, Tortious Interference with Contract, and Tortious Interference with Business Relationship.

{¶ 64} The majority affirms the trial court's dismissal of appellant's claims of incompetence, tortious interference with contract, and tortious interference with business relationship finding appellant's complaint failed to state a claim on which relief could be granted. Once again, I find the majority's conclusion is premised on an incorrect application of law and would reverse the judgment of the trial court.

### a. Incompetence

{¶ 65} Appellant's complaint alleges facts which, when presumed to be true, support a claim of incompetence. Specifically, appellant alleges that in 2008 he entered into a series of agreements with his father which would have resulted in appellant either remaining the transfer-on-death beneficiary for certain parcels of land or, in the alternative, being compensated should his father change the beneficiary prior to his father's death. Appellant alleges that in 2012 and 2015, his father executed new "transfer on death" designations related to the parcels in dispute. Appellant alleges, however, that

his father was incompetent at the time of the TOD Changes rendering the transfers invalid.

{¶ 66} Under *Mitchell,* 40 Ohio St.3d at 192, 532 N.E.2d 753, we must presume the allegations of a complaint to be true on review of the trial court's dismissal of appellant's claim. Rather than presuming these allegations to be true, however, the majority performs a type of fact-finding and reaches its own conclusion that appellant asserts only his father's age as the basis for his incompetence. The majority then relies on the 1962 statutory definition of incompetence as quoted in *In re. Guardianship of Breece,* 173 Ohio St. 542, 545-546, 184 N.E.2d 386 (1962), to dismiss appellant's claim holding age alone is not sufficient to show incompetence.

{¶ 67} My disagreement here lies in the majority making a factual determination that age was the sole basis for appellant's father's incompetence. Such an assertion is based purely on speculation and not the allegations set forth in the complaint. Nowhere in the complaint does appellant state his father's incompetence is based solely on his age. Instead, appellant alleges his father was of "unsound mind and memory and therefore incapable of conveying any interest in the properties[.]" The law does not permit us to speculate that appellant alleges his father was incompetent based on age alone as the majority concludes. As with the statute of limitations arguments, we are to presume the facts alleged by appellant that his father was of unsound mind and failing memory are true and determine if those facts are sufficient to support his claim. To require anything further would require a heightened standard of pleading similar to that described in

31.

Civ.R. 9, which is simply not required to allege a claim of incompetency under the civil rules or any other case authority.

{¶ 68} In reaching its decision, the majority has inappropriately and prematurely concluded that age is the only evidence of incompetence appellant could present at trial in this matter. This presumption not only completely disregards the actual allegations in the complaint, it forecloses appellant's ability to present evidence of any non-age related factors contributing to his father's incompetence at trial. The majority's weighing of its own speculative facts drawn from the complaint is improper and precludes appellant from pursuing his sufficiently alleged claim of incompetence. Because of this, I dissent from the majority's conclusion and would reverse the trial court's dismissal of appellant's incompetence claim.

### b. Tortious Interference with Contract and a Business Relationship

{¶ 69} A claim of tortious interference with contract requires interference with an existing contract while interference with a business relationship requires the accused party to have interfered with an existing or future business relationship in order to be held liable for damages. *A&B-Abell Elevator Co. v. Columbus/Central Ohio Building & Construction Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283 (1995). Due to the similarity in the elements of each claim, the majority addresses these claims together.

{¶ 70} In affirming the trial court's dismissal of these claims, the majority once again weighs the merits of appellant's claims rather than simply determining whether the complaint alleges sufficient facts to support the claim. Specifically, the majority finds

32.

that the promissory notes filed by appellant are unenforceable. The promissory notes supporting the basic allegations of appellant's claims were executed on July 2, 2008. The notes reference the June 20, 2008 execution of "transfer on death" naming appellant as the transferee of the subject properties. The majority concludes that because the transfer on death deeds occurred before the promissory notes were executed that those deeds cannot serve as the consideration for the promissory notes. *See Cuspide Properties Ltd. v. Earl Mechanical Servs.,* 2015-Ohio-5019, 53 N.E.3d 818, ¶ 46 (6th Dist.) (holding that "[a] promise to do what one is already bound to do is not sufficient consideration for a new contract"). As a result, the majority concludes the promissory notes are unenforceable and appellant's claims were properly dismissed.

{¶ 71} The majority's conclusion improperly determines the enforceability of the notes in affirming the dismissal of these claims. When reviewing a motion to dismiss for failure to state a claim on which relief can be granted, "the principles of notice pleading apply and 'a plaintiff is not required to prove his or her case at the pleading stage.'" *David v. Matter*, 6th Dist. Lucas No. S-17-006, 2017-Ohio-7351, ¶ 8, citing *Piispanen v. Carter*, 11th Dist. Lake No. 2005-L-133, 2006-Ohio-2382, ¶ 10, quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991). Thus, it is only the allegations in the complaint which can be utilized in reviewing the trial court's dismissal of appellant's claims. *Mitchell* at 192. By determining the existence and enforceability of a contract when no evidence has been introduced, the majority has expanded its review of the record far beyond the limited scope of review applicable to motions to dismiss.

33.

{¶ 72} Even assuming our review allowed us to look beyond the allegations in the complaint to determine whether the contracts are enforceable, the majority's conclusion that they are not enforceable is not supported in the complaint. The majority concludes that the transfer-on-death affidavit and the promissory note are entirely separate agreements and, therefore, since appellant's father had already obligated himself to appellant through the affidavit that the transfer-on-death benefit cannot serve as consideration for the promissory note. That a promisor's prior obligation to perform under a contract cannot serve as consideration for a new agreement is a proper statement of law. *Cuspide Properties* at ¶ 46. However, the majority's conclusion that the transfer-on-death affidavit cannot serve as consideration for the promissory notes is based on the majority's improper speculation that these instruments are entirely separate and unrelated.

{¶ 73} For over a century, Ohio has recognized that execution of an agreement does not require simultaneous execution of all aspects of the contract. *Thayer v. Luce*, 22 Ohio St. 62 (1871) "Several writings, though made at different times, may be construed together, for the purpose of ascertaining the terms of a contract required, by the statute of frauds, to be in writing and signed by the party to be charged therewith." *Id.* The allegations in the complaint suggests that these two instruments are part of the same agreement between the parties. The fact that one of the instruments was executed several weeks prior to the other does not necessarily require, or even permit at the pleadings stage, a finding that they are not part of the same agreement. For the majority to

34.

conclude, without any evidence or testimony explaining how the agreement came into existence, that the notes are not enforceable again disregards any evidence appellant may be able to introduce at trial in support of his claims.

{¶ 74} Put simply, the majority's conclusion could prove to be true. Such a conclusion, however, is reserved for the appropriate stage of the proceedings, after the parties have conducted discovery and after all relevant evidence has been weighed. This matter is still in the pleading phase, which is not the appropriate stage to determine the enforceability of the notes. I therefore dissent from the majority. I would reverse the trial court's dismissal of appellant's tortious interference with contract and business relations claims.

### V. Appellant's Claims Against Remaining Defendants Should not be Dismissed When Those Parties did not Request Dismissal.

{¶ 75} Finally, I would reverse the trial court's dismissal of any of appellant's claims against defendants that did not move for dismissal. Appellant's complaint names as defendants Charlene Ostafi, both individually and as the administratrix of the estate of Charles Krohn, Charlene's unnamed spouse,[4] Randall Krohn, Robert Krohn, and First Federal Savings & Loan of Delta. Only defendant Charlene Ostafi, in her individual and administrative capacities, filed a motion to dismiss pursuant to Civ.R. 12(B). The trial

---

[4] Whether appellant complied with Civ.R. 3(A) and 15(D) in commencing an action against a fictitiously-named defendant is beyond the scope of this dissent.

35.

court dismissed appellant's claims as to all defendants despite the remaining defendants' failure to file a responsive pleading or a motion to dismiss.

{¶ 76} "The Rules of Civil Procedure neither expressly permit nor forbid courts to *sua sponte* dismiss complaints. Generally, a court may dismiss a complaint on its own motion pursuant to Civ.R. 12(B)(6), failure to state a claim upon which relief may be granted, only after the parties are given notice of the court's intention to dismiss and an opportunity to respond." *Edwards v. Toledo City School Dist. Bd. Of Edn.*, 72 Ohio St.3d 106, 108, 647 N.E.2d 799 (1995). Here, the trial court did not provide appellant with notice of its intent to dismiss his claims against the remaining defendants. Without such notice, I find the dismissal of claims against the remaining defendants was improper. I would reverse the judgment of the trial court dismissing the claims against appellee Ostafi's unnamed spouse, Randall Krohn, Robert Krohn, and First Federal Savings & Loan of Delta.

## VI. Conclusion

{¶ 77} Based on the foregoing, I respectfully do the following:

{¶ 78} I concur with the majority in affirming the trial court's dismissal of appellant's claim for unjust enrichment and would find assignment of error No. 1 not well-taken, in part, and would affirm the dismissal of this claim without prejudice.

{¶ 79} I dissent from the majority's finding that appellant's claims of undue influence, fraud, breach of fiduciary duty, and intentional interference with expectancy of inheritance are barred by the applicable statute of limitations. I would find appellant's

first assignment of error well-taken and would reverse the judgment of the trial court dismissing these claims.

{¶ 80} I dissent from the majority's finding that appellant's complaint failed to state a claim on which relief could be granted on his claims of incompetence, tortious interference with contract, and tortious interference with business relationship. I would find appellant's first assignment of error well-taken and would reverse the judgment of the trial court dismissing these claims.

{¶ 81} Finally, I dissent from the majority's affirmance of the trial court's dismissal of appellant's claims against appellee Ostafi's unnamed spouse, Randall Krohn, Robert Krohn, and First Federal Savings & Loan of Delta. The trial court had no basis on which to grant dismissal against these non-moving parties without first providing notice to appellant. I would reverse the judgment of the trial court and remand this matter for further proceedings against these defendants.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.